## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

BILLY D. CLOUD,

       *Plaintiff,*

 vs.

CHRISTINE WORMUTH,
SECRETARY OF THE U.S. ARMY,

       *Defendant.*

Case No. 20-cv-4-EFM

## MEMORANDUM AND ORDER

Before the Court is Defendant Christine Wormuth, Secretary of the U.S. Army's Motion for Summary Judgment (Doc. 77).  Defendant seeks summary judgment on Plaintiff Billy D. Cloud's claims for discriminatory compensation, hostile work environment, and retaliation all under the Age Discrimination in Employment Act ("ADEA").  Because genuine issues of material fact exist as to Plaintiff's claims for discriminatory compensation and hostile work environment, the Court denies Defendant's Motion as to the same.  The Court grants summary judgment on Plaintiff's ADEA retaliation claim because Plaintiff fails to substantively respond to Defendant's Motion as to that claim.

# I.     Factual and Procedural Background

## A.     The parties' contentions regarding factual issues

Before stating the facts of the case, the Court must address the parties' contentions about the admissibility of the other's evidence.  First, Plaintiff argues that this Court should disregard all of Defendant's declarations because they come from interested parties.  He further contends that Defendant summary chart of night shift employees during the relevant period is inadmissible as hearsay.  Finally, Defendant contends that Plaintiff's own declaration is nothing but a "sham affidavit."  The Court will address each of these evidentiary arguments in turn.

### 1.     Defendant's declaration

First, Plaintiff argues that Defendant's multiple declarations are inadmissible under *Reeves v. Sanderson Plumbing Prod., Inc.*[1]  There, the Supreme Court declared that when ruling on a motion for judgment as a matter of law, "the court should review the record as a whole [but] must disregard all evidence favorable to the moving party that the jury is not required to believe."[2]  Thus, "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses."[3]  The Tenth Circuit has applied this standard to motions for summary judgment without analysis.[4]  At least one Tenth Circuit case,

---

[1] 530 U.S. 133 (2000).

[2] *Id.* at 151.

[3] *Id.* (further citation and quotations omitted).

[4] *See Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 538 (10th Cir. 2014).

however, has clarified that the rule only applies to "a matter [the moving party] must prove on the strength of its own evidence."[5]

In the present case, the Court agrees with Defendant that Plaintiff bears the burden of proof to show either direct evidence of discrimination or to establish his prima facie case under the familiar *McDonnell Douglas* framework. However, even this implies a restrictive reading of *Reeves*, one potentially fatal to any employer's motion for summary judgment.[6] For example, the employer bears the burden of production on the second step of a *McDonnell Douglas* framework to articulate a legitimate, nondiscriminatory reason for the adverse action.[7] If the Court could not consider the testimony of a defendant-employer's witnesses, it is clear that many or most employers could never meet their burden at that stage.[8] After all, articulating a reason is inherently reliant on the defendant-employers reasoning, something usually establish through their testimony. This reasoning is echoed and adhered to by the majority of circuits which conclude that, under *Reeves*, courts ruling on summary judgment motions may still consider *uncontradicted* testimony from interested witnesses.[9]

As mentioned above, the Tenth Circuit has not explicitly analyzed this issue. However, given the clear weight of authority and the logic of their reasoning, the Court is confident it would

---

[5] *Jackson v. Loftis*, 189 F. App'x 775, 778 (10th Cir. 2006).

[6] *See, e.g.*, *Lopez-Hernandez v. Terumo Puerto Rico LLC*, 64 F.4th 22, 30–31 (1st Cir. 2023) (holding that a court may consider uncontradicted testimony from interested witnesses because the opposite conclusion is illogical and would undermine an employer's ability to ever obtain summary judgment).

[7] *See id.*

[8] *See id.*

[9] *Lopez-Hernandez*, 64 F.4th at 30–31; *accord Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 271–72 (3d Cir. 2007); *Luh v. J.M. Huber Corp.*, 211 F. App'x. 143, 146 (4th Cir. 2006); *Stratienko v. Cordis Corp.*, 429 F.3d 592, 597–98 (6th Cir. 2005); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002); *Traylor v. Brown*, 295 F.3d 783, 790–91 (7th Cir. 2002); *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1205 n.14 (11th Cir. 2013).

-3-

arrive at a similar conclusion as its sister circuits. Thus, the Court holds that it may consider Defendant's declarations insofar as they are uncontradicted by other evidence.

>    2.    *Plaintiff's objections to Defendant's summary chart*

Second, Plaintiff objects to an Excel spread sheet purporting to summarize the number of night shift employees that Plaintiff oversaw between November 3, 2014, and November 9, 2016. Plaintiff raises two specific objections to this evidence: hearsay and inadmissible summary evidence because the underlying records were not provided to the court.

The Court has little hesitancy in concluding that the business records exception to hearsay under Fed. R. Evid. 803(6) applies to the summary chart. To satisfy this exception, the hearsay's proponent must show that the records would: "(1) have been prepared in the normal course of business; (2) have been made at or near the time of the events recorded; (3) be based on the personal knowledge of the entrant or of a person who had a business duty to transmit the information to the entrant; and (4) indicate the sources, methods and circumstances by which the record was made were trustworthy."[10] Defendant submits an affidavit from William Morgan, who claims to have created the original rosters on which the summary is based. Morgan's affidavit establishes that as a part of his duties as a clerk, he prepared the rosters on or shortly after the night shift in question based on his personal knowledge. He further indicates that the sources, methods, and circumstances for those rosters is trustworthy. Therefore, to the extent the rosters themselves constitute hearsay, the Court finds that the business records exception applies. Thus, they are admissible.

---

[10] *United States v. Ary*, 518 F.3d 775, 786 (10th Cir. 2008).

As for the summary chart itself, Plaintiff offers no persuasive objection. Although Plaintiff claims that the summary cannot be admitted if the underlying records have not been submitted to the Court, this claim is without basis in either the Federal Rules of Evidence or caselaw. Rather, Fed. R. Evid. 1006 provides that parties "may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Furthermore, "[t]he proponent [of the summary evidence] must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court *may* order the proponent to produce them in court."[11] This rule explicitly gives the court the discretion to order the party to produce the underlying evidence without requiring it to.[12]

The record establishes that Defendant provided the rosters to Plaintiff for review. Plaintiff raises no objection to the content of the rosters; nor does he contend that the summary inaccurately represents those contents. Therefore, the Court in its discretion will consider the summary chart for the purposes of this Order.[13]

### 3.    *Plaintiff's declaration*

Finally, Defendant objects to Plaintiff's affidavit submitted in support of his Response, characterizing it as a "sham affidavit." Tenth Circuit caselaw makes clear that "an affidavit may

---

[11] Fed. R. Evid. 1006 (emphasis added).

[12] *See United States v. Thompson*, 518 F.3d 832, 858–59 (10th Cir. 2008) ("The admission of summaries under Rule 1006 is within the sound discretion of the trial court.") (quoting *Harris Mkt. Research v. Marshall Mktg. & Commc'ns, Inc.*, 948 F.2d 1518 (10th Cir. 1991)).

[13] To the extent Plaintiff argues that Morgan's declaration differs from his prior EEO declaration, the Court disagrees. They do not contradict each other, nor does his later declaration create a shame issue of fact under the test outlined below.

not be disregarded [merely] because it conflicts with the affiant's prior sworn statements."[14] However, affidavits that only create a "sham issue of fact" are improper for a court's consideration on summary judgment.[15]  The Tenth Circuit has articulated a three-factor test to determine when conflicting affidavits create a sham issue of fact.[16]  These factors are:

> "[1] whether the affiant was cross-examined during his earlier testimony, [2] whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and [3] whether the earlier testimony reflects confusion which the affidavit attempts to explain."[17]

Defendant identifies six factual statements in Plaintiff's affidavit which she claims contradict his earlier testimony during his deposition.  The most pertinent of these is where Plaintiff's affidavit states that Buckner and Ross told him they would not pay him at a higher paygrade because they wanted to save that money for younger employees.  In contrast, Plaintiff stated during his deposition that he did not know why Ross did not pay him more and never mentioned Buckner's reason at all.

For all six of these statements, the factors favor finding that Plaintiff's affidavit merely creates sham factual issues.  First, Plaintiff was subjected to cross-examination during his deposition.  Second, because the statements in both the affidavit and his deposition were based on his memory, he had access to that "pertinent evidence" at the time of his deposition.  Finally, Plaintiff's testimony during his deposition does not reflect confusion such that the affidavit

---

[14] *Ralston v. Smith & Nephew Richards, Inc.,* 275 F.3d 965, 973 (10th Cir. 2001) (further citations and quotations omitted).

[15] *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 784 (10th Cir. 2021) (citing *Burns v. Bd. of Cnty. Comm'rs of Jackson Cnty.*, 330 F.3d 1275, 1281–82 (10th Cir. 2003)).

[16] *Id.*

[17] *Burns*, 330 F.3d at 1282 (further citations and quotations omitted).

explains that confusion.  Rather, Plaintiff adds detailed facts that he could have easily shared at his deposition, several of which directly contradict his testimony there.  These factors support finding that Plaintiff creates sham fact issues by asserting these extra facts in his affidavit.  Thus, where contradictory, the Court will rely on Plaintiff's testimony during his deposition instead of his affidavit.

## B.     Uncontroverted facts

This is an age discrimination case brought under the ADEA and stemming from Plaintiff Billy D. Cloud's employment at McAlester Army Ammunition Plant ("MCAAP") between 2014 and 2016.  In 2014, Plaintiff was 63 years old, working as an Explosives Operator Supervisor on the night shift in the "Bomb and Mine" section of MCAAP's facility.   Plaintiff received compensation as a "WS-06" employee, which is a pay level under the Federal Wage System.  Plaintiff's duties on the night shift included supervising multiple buildings and all the employees within those buildings.  During the relevant period, Plaintiff oversaw between 20–50 employees on a given night, although that number dwindled as November 2016 approached.[18]

William Buckner was Plaintiff's direct or first-level supervisor.  Buckner, however, testified that he was the first-level supervisor to WS-09 positions but only the second-level supervisor to WS-06 positions.  Although he did not directly control Plaintiff's pay level, he could request that Plaintiff be promoted for a five-year term. On his own, he was able to give Plaintiff 120-day temporary promotions, something which never occurred during the relevant time period.

---

[18] Plaintiff states that he oversaw between 100–150 employees each night.  In context, this statement appears to refer to before the relevant time period, a conclusion bolstered by the fact that Plaintiff does not contradict the data contained in the summary affidavit, which is where this figure comes from.  But since it is ultimately immaterial to the Court's decision, the Court need not consider this statement at this time.

John Ross was Buckner's supervisor, i.e., Plaintiff's second-level supervisor, and was responsible for compensation decisions involving Plaintiff.  Ross is about 15 years younger than Plaintiff.  The commanding officer at MCAAP was commonly referred as "the Old Man," although the parties do not name him here.

At the same time, Jeremy Harris and Jerry Lovell—both 43 years old in 2014—worked as Explosives Operations Supervisors on the day shift.  Each supervised multiple buildings and roughly 100–135 employees.  They received compensation at the WS-09 level.  Two other employees, Billy Morgan and Lana Summers, averred in declarations to the Equal Employment Opportunity ("EEO") office that Plaintiff was performing the same duties as a WS-09 dayshift supervisor.  Buckner, however, states that dayshift supervisors perform duties unique to the dayshift, such as attending meetings with all levels of leadership.

During the relevant period, Buckner made numerous comments disparaging Plaintiff's age.  Examples include, "Pops, you need to go home, you're older[,]"[19] and "You're one of the old dinosaurs, you need to leave here."[20]  Buckner also instructed other supervisors to favor promoting younger employees, telling Plaintiff that he needed to retire and "take your old ass home."  Additionally, Ross told Plaintiff that he needed to consider retiring because of his advanced age.

At some point in 2016, Plaintiff decided to retire and informed Buckner that he intended to do so.  Buckner then began soliciting resumes to replace Plaintiff while advertising that the new position would receive compensation at a WS-08 level.  In his deposition, Buckner claims that the position would have only been paid at the WS-08 level for 120 days.  Once Plaintiff discovered

---

[19] Cloud Dep. Doc. 78-3, at 148:18.

[20] Cloud Dep. Doc. 78-3, at 167:5–6.

that Buckner was advertising the position at a higher pay grade, he rescinded his retirement paperwork. Buckner responded by withdrawing the open position. At that time, Plaintiff told Buckner and Ross that he wanted to be paid at the WS-09 level. Nevertheless, he continued to be paid as a WS-06 employee.

Plaintiff first complained to the Army EEO office about not getting paid at the WS-09 level on November 2, 2016. On November 14, 2016, Plaintiff was reassigned to the Medium Caliber section of the MCAAP, which is separate from the Bombs and Mines section. Buckner stated that the reason for Plaintiff's transfer was that Bomb and Mine had been completely shut down at the time, as evidenced by the dwindling number of employees working there in Fall 2016. Buckner also stated that Ross told him that "[Plaintiff] had just caught me downstairs and said he felt that he was working . . . our of his pay grade, so I need you to see that he gets moved to . . . a building."[21] At Medium Caliber, Plaintiff continued to work as a WS-06 on the night shift. However, he did not have supervisory duties and had very little to do there. While working at Medium Caliber, Plaintiff observed Buckner smirking at him, continuing to comment on his age, and pressuring him to retire.

Plaintiff retired on April 2, 2018. He informed Buckner of his intent only a few days before he left. In late March 2018, however, Buckner initiated the process to hire on a WS-09 as an Explosives Operator Supervisor to head up a new night shift at the Bombs and Mine section. Buckner did not announce the new position until the day after Plaintiff officially retired. Lovell ended up receiving the position. As the night shift supervisor, he performed the same duties as

---

[21] Buckner Dep. Doc. 78-1, at 149:21–25.

Plaintiff, oversaw between four to 60 employees depending on the season, and continued to be paid as a WS-09.

Plaintiff filed the instant suit on January 3, 2020. After nearly three and a half years of protracted litigation, Defendant has now moved for summary judgment.

## II.  Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[22] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[23] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[24] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[25] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[26] Furthermore, the "content or substance of the evidence must be admissible" at trial.[27] Inadmissible

---

[22] Fed. R. Civ. P. 56(a).

[23] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[24] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[25] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

[26] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[27] *Swift-Eckrich, Inc. v. Advantage Sys., Inc.*, 55 F. Supp. 2d 1280, 1286 (D. Kan. 1999); *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir.1995) (further quotations and citations omitted).

hearsay, for example, "is not suitable grist for the summary judgment mill."[28]   The court views all

evidence and reasonable inferences in the light most favorable to the non-moving party.[29]

### III.    Analysis

**A.    Discriminatory compensation claim**

First, Defendant seeks summary judgment on Plaintiff's claim for discriminatory

compensation under 29 U.S.C. § 633a, the ADEA provision which applies specifically to federal

employees.   Section 633a(a) states that "[a]ll personnel actions affecting employees or applicants

for employment who are at least 40 years of age . . . shall be made free from any discrimination

based on age."

*1.     Causation standard for Plaintiff's claims.*

Before analyzing the issues of the case, the parties dispute the relevant causation standard.

Plaintiff, relying on *Babb v. Wilkie*,[30] broadly claims that a lesser causation standard applies to

ADEA claims brought by federal employees.   In *Babb*, the Supreme Court analyzed the part of

§ 633a(a) requiring that all personnel decisions regarding federal employees "shall be made free

from any discrimination based on age."[31]   Contrary to Plaintiff's argument, the Supreme Court

emphasized that "under § 633a(a), age must be the but-for cause of *differential treatment*."[32]

---

[28] *Rowe v. United Airlines, Inc.*, 62 F. Supp. 3d 1225, 1231 (D. Colo. 2014), *aff'd*, 608 F. App'x 596 (10th Cir. 2015) (further quotations and citations omitted).

[29] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

[30] 140 S. Ct. 1168 (2020).

[31] *See id.* at 1172 (quoting 29 U.S.C. § 633a(a)).

[32] *Id.* at 1174 (emphasis in original).

However, age need not be the be "a but-for cause of the *ultimate decision*."[33]  The Supreme Court gave the following example:

> Suppose that a decision-maker is trying to decide whether to promote employee A, who is 35 years old, or employee B, who is 55. Under the employer's policy, candidates for promotion are first given numerical scores based on non-discriminatory factors. Candidates over the age of 40 are then docked five points, and the employee with the highest score is promoted. Based on the non-discriminatory factors, employee A (the 35-year-old) is given a score of 90, and employee B (the 55-year-old) gets a score of 85. But employee B is then docked 5 points because of age and thus ends up with a final score of 80. The decision-maker looks at the candidates' final scores and, seeing that employee A has the higher score, promotes employee A.
>
> This decision is not "made" "free from any discrimination" because employee B was treated differently (and less favorably) than employee A (because she was docked five points and A was not). And this discrimination was "based on age" because the five points would not have been taken away were it not for employee B's age.
>
> It is true that this difference in treatment did not affect the outcome, and therefore age was not a but-for cause of the decision to promote employee A. Employee A would have won out even if age had not been considered and employee B had not lost five points, since A's score of 90 was higher than B's initial, legitimate score of 85. But under the language of § 633a(a), this does not preclude liability.[34]

As demonstrated by the example above, the Supreme Court recognized that liability may attach in the absence of but-for causation between the adverse employment action and age discrimination.[35]  However, the Supreme Court went on to hold "but-for causation is important in determining the appropriate remedy."[36]  Accordingly, "§ 633a(a) plaintiffs who demonstrate only that they were subjected to unequal consideration cannot obtain reinstatement, backpay, compensatory damages, or other forms of relief related to the end result of an employment

---

[33] *Id.* (emphasis in original).

[34] *Id.*

[35] *See id.*

[36] *Id.* at 1177.

decision."[37]  Any plaintiff seeking such remedies "must show that age discrimination was a but-for cause of the employment outcome."[38]

Here, Plaintiff seeks as remedies "wage loss, including back, present and front pay along with the value of benefits associated with such wages, in addition to equitable relief including retroactively changing Mr. Cloud's pay grade to that which he would have been paid *but for* his age."[39]  All of these requested remedies relate to the "end result" of Defendant's employment decision to pay Plaintiff at a WS-06 level.  Thus, Plaintiff must still prove but-for causation to prevail on his claims for relief.[40]

  *2. Direct evidence*

The parties dispute whether Plaintiff has presented direct evidence of this claim.  "Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption."[41]  This includes "oral or written statements on the part of a defendant showing a discriminatory motivation."[42]  However, even statements reflecting personal bias are irrelevant if not made by those with decision-making authority.[43]  Furthermore, the context and timing of the

---

[37] *Id.*

[38] *Id.* at 1177–78.  In her concurrence, Justice Sotomayor speculated that additional, lesser remedies might be available to a plaintiff who fails to prove but-for causation, such as out-of-pocket expenses.  *See id.* at 1178–79 (Sotomayor, J., concurring).  However, Plaintiff has failed to cite to any caselaw where a court took up Justice Sotomayor on her offer to create additional remedies for plaintiffs who could not show but-for causation.

[39] Pl.'s Complaint, ¶¶ 34, 35 (emphasis added).

[40] Plaintiff mentions briefly that Defendant has not moved for summary judgment on his claims for monetary damages.  This is incorrect, given that Defendant moves for summary judgment on each of Plaintiff's claims.

[41] *Steele v. Kroenke Sports Enterprises, L.L.C.*, 264 F. App'x 735, 744–45 (10th Cir. 2008) (further citations and quotations omitted).

[42] *Id.* (further citations and quotations omitted).

[43] *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013); *see also Power v. Koss Const. Co.*, 499 F. Supp. 2d 1194, 1201 (D. Kan. 2007) (recognizing that offering such statements showing personal bias is really just asking "the fact-finder to infer that, because the defendant harbors personal opinions, the defendant acted with discriminatory intent toward the plaintiff.").

statements must be closely linked to the adverse decision.[44]  Regardless, "if the content and context of a statement allow it to be plausibly interpreted in two different ways—one discriminatory and the other benign—the statement does not qualify as direct evidence."[45]

In attempting to show direct evidence, Plaintiff relies solely on Buckner's and Ross's comments—alleged in his affidavit—that they would not pay him more because they wanted to save that money for younger employees.  As discussed above, the Court disregards this testimony as contradictory to Plaintiff's deposition testimony where Plaintiff omitted any mention of Buckner's testimony and stated that he did not know why Ross had not raised his pay level.  Given that these are the sole statements Plaintiff relies on as direct evidence, their omission necessarily means he cannot show direct evidence.  Instead, he must attempt to show discrimination under the familiar *McDonnel Douglas Corp. v. Green*[46] standard for circumstantial evidence.

3.    McDonnell Douglas *analysis*

Without direct evidence of age discrimination, a wage discrimination claim under the ADEA employs the familiar *McDonnel Douglas* burden-shifting framework as race or gender discrimination claims.[47]  First, the plaintiff must establish the elements of his prima facie case.[48] If successful, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason

---

[44] *Tabor*, 703 F.3d at 1216.

[45] *Id.*

[46] 411 U.S. 792 (1973).

[47] *See Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1278 (10th Cir. 2010); *Daniels*, 701 F.3d at 636.  It is notable that the Tenth Circuit has continued to apply the *McDonnell Douglas* analysis to ADEA discrimination claims brought by federal employees even after *Babb*.  *See Laber v. Austin*, 2022 WL 17361437, *8 (D. Kan. 2022) (discussing application of *Babb* to ADEA claims and—relying on Tenth Circuit precedent—concluding it did not eliminate application of *McDonnell Douglas*) (citing *Cummings v. United States Postal Serv.*, 2021 WL 4592271, at *5 (10th Cir. 2021)).

[48] *Daniels*, 701 F.3d at 636.

-14-

for the disparity in pay.[49]  Upon making that showing, the burden shifts back to the Plaintiff to show that the defendant's proffered reason is pretextual.[50]

        a.      Plaintiff's prima facie case

To state a prima facie case for discriminatory compensation under the ADEA, a plaintiff must show (1) he is a member of a protected class, i.e., over 40 years of age and (2) he performed similar work to younger employees who received greater compensation.[51]  "Similar work" remains relatively undefined by the Tenth Circuit, but it is clear that this standard is not so high as the "substantially equal work" standard under the Equal Pay Act.[52]

Here, Plaintiff was undisputedly over 40 years during the relevant period, thus establishing the first element.  For the second, Plaintiff has successfully shown that a genuine issue of material fact remains as to whether he performed "similar work" as the dayshift supervisors being paid at the WS-09 level.  Both Plaintiff and those supervisors oversaw employees throughout multiple buildings, with two EEO declarations averring that Plaintiff performed the same duties as the dayshift operators.  Defendant points out that the number of employees Plaintiff usually oversaw during the time period, between 20 and 50, was less than the dayshift supervisors with 100 to 135 employees.  She also offers evidence that dayshift supervisors have some additional responsibilities, such as attending extra leadership meetings.  However, Plaintiff's burden here is not heavy—he need not show that he performed substantially equal work, only "similar" work.

---

[49] *Id.*

[50] *Id.*

[51] *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 636 (10th Cir. 2012).

[52] *See id.* at 636 n.4 ("The district court concluded that because Daniels could not meet Title VII's requirement of showing she was paid less than males performing similar work, she also could not meet the EPA's stricter standard of showing she was paid less than males performing 'substantially equal work.' ") (quoting *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006)).

-15-

Given that there are conflicting accounts in the record as to whether Plaintiff's work was similar to that of the dayshift supervisors, there remains a genuine issue of material fact as to this element. For the purposes of summary judgment, therefore, Plaintiff has established his prima facie case.

b.      Legitimate nondiscriminatory reason

The parties do not dispute that Defendant has proffered evidence showing a legitimate, nondiscriminatory reason for not paying Plaintiff at the WS-09 level.[53]  All a defendant need do at this stage is offer proof of "a facially nondiscriminatory reason for the termination."[54]   The defendant need not "litigate the merits of its reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a [nondiscriminatory] fashion."[55]

Here, Defendant has offered uncontroverted evidence that Harris and Lowell—paid as WS-09s—supervised more employees than Plaintiff between 2014 and 2016, and that they had extra duties as a part of working on the day shift.  This is sufficient to shift the burden back to Plaintiff to show pretext.

c.      Pretext

Because Defendant has proffered a legitimate, nondiscriminatory reason for Plaintiff's wage status as a WS-06, the burden is on Plaintiff to show that Defendant's reason is pretextual. "A plaintiff may show pretext by demonstrating the proffered reason is factually false, or that

---

[53] *See Reeves*, 530 U.S. at 142 (stating defendant's burden to show legitimate, nondiscriminatory reason is "one of production, not persuasion").

[54] *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992).

[55] *Gupta v. Okla. City Pub. Sch.*, 2022 WL 1742048, at *5 (10th Cir. 2022) (quoting *Flasher Co.*, 986 F.2d at 1316.

discrimination was a primary factor in the employer's decision."[56] Thus, a plaintiff "must produce evidence showing weakness, implausibility, inconsistency, incoherency, or contradiction in [the defendant]'s stated reasons, such that a reasonable jury could find them unconvincing."[57] This is not an onerous burden, but neither is it empty or perfunctory.[58]

Here, there is a genuine issue of material fact as to whether Defendant's proffered reason for paying Plaintiff at a WS-06 was pretextual. Of course, "age-related comments by non-decisionmakers are not material in showing the [defendant]'s action was based on age discrimination."[59] Furthermore, "[i]solated remarks, unrelated to the disputed employment action, are insufficient to demonstrate discriminatory animus."[60]

First, Plaintiff offers evidence of Buckner's numerous age-related comments telling Plaintiff how he should retire, go home, or that he was a dinosaur as circumstantial evidence of discrimination. Likewise, there is evidence that Buckner, while not ultimately responsible for Plaintiff's pay grade, still had influence in that decision and the authority to initiate the promotion process. In that sense, there is an issue of fact as to whether Buckner was a "decision-maker" such that his comments are evidence of discrimination. Although Buckner's comments alone might be insufficient to show that discrimination was a primary factor in the decision to pay Plaintiff as a WS-06, they are certainly probative of that fact.

[56] *Markley v. U.S. Bank Nat'l Ass'n*, 59 F.4th 1072, 1081–82 (10th Cir. 2023) (further citation and quotations omitted).

[57] *Daniels*, 701 F.3d at 639.

[58] *See Helmerichs v. Potter*, 533 F. Supp. 2d 1137, 1150 (D. Kan. 2008) (citing *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323–24 (10th Cir.1997)).

[59] *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994).

[60] *Stover v. Martinez*, 382 F.3d 1064, 1077 (10th Cir. 2004) (speaking in the context of antisemitic claim); *see also Johnson v. Potter*, 2004 WL 2823237, at *9 (D. Kan. 2004), *aff'd*, 156 F. App'x 61 (10th Cir. 2005) (quoting *Stover* in ADEA context).

Ross is undisputedly a decisionmaker.  However, Plaintiff relies on only one comment from him where Ross told Plaintiff he needed to consider retiring because of how old he was.  This isolated comment is facially unrelated to the decision to pay Plaintiff as a WS-06.  Accordingly, the Court does not consider it probative of a discriminatory animus.

But other evidence favors finding a genuine issue of material fact as to pretext.  Upon learning of Plaintiff's forecasted retirement in 2016, Buckner advertised a replacement position as a WS-08, two grades higher than Plaintiff.  When Plaintiff decided not to retire, Buckner rescinded the position and continued to pay Plaintiff at only a WS-06 level.  This indicates a conscious decision to not pay Plaintiff at a higher level despite the responsibilities of his position and is circumstantial evidence of discrimination.

Furthermore, the suspicious timing regarding when Buckner restarted the Bomb and Mine night shift in 2018 favors finding pretext.  True, two years had passed between moving Plaintiff to Medium Caliber and Buckner creating the new Explosives Operator Supervisor position.  However, Buckner announced the position the day after Plaintiff retired and hired Lovell at the WS-09 level to perform duties practically identical to those Plaintiff had during 2014 to 2016.  The only recorded difference between Lowell and Plaintiff is that Lowell is much younger.  For these reasons, the Court concludes that genuine issues of fact as to pretext exist, thus precluding summary judgment on Plaintiff's discriminatory compensation claim.  Based on the foregoing reasons, Defendant's Motion as to Plaintiff's claim for discriminatory compensation is denied.

**B.      Plaintiff's hostile work environment claim**

Plaintiff also asserts a hostile work environment claim under the ADEA.  Defendant first moves for summary judgment with a perfunctory argument that the ADEA does not provide for hostile work environment claims.  This flies in the face of a long line of Tenth Circuit caselaw

allowing exactly what Defendant claims is impossible—ADEA hostile work environment claims.[61]  Defendant's argument is without merit.

Defendant goes on to argue that Plaintiff cannot establish an issue of fact as to whether he experienced an actionable hostile work environment.  It is important to note that Plaintiff's claim for a hostile work environment covers not only 2014 to 2016 but also the following two years during which Plaintiff was reassigned to Medium Caliber.

"For a hostile environment claim to survive a summary judgment motion, a plaintiff must show that a rational jury could find that the workplace was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[62]  Several factors are relevant to this analysis, namely: "[1] the frequency of the discriminatory conduct; [2] its severity; [3] whether it is physically threatening or humiliating, or a mere offensive utterance; and [4] whether it unreasonably interferes with an employee's work performance."[63]  Courts must also assess whether the environment is subjectively *and* objectively hostile.[64]  Isolated comments are not enough—rather, a plaintiff must show a "steady barrage" of discriminatory remarks to rise to the level of a hostile environment.[65]

---

[61] *See, e.g.*, *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005), *abrogated on other grounds by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018); *Harper v. Arrow Elecs.*, 2021 WL 6071625, at *5 (10th Cir. 2021) (implicitly recognizing availability of ADEA hostile work environment claim).

[62] *Cash v. Lockheed Martin Corp.*, 684 F. App'x 755, 761 (10th Cir. 2017) (quoting *MacKenzie*, 414 F.3d at 1280).

[63] *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 897 (10th Cir. 2017) (further citation and quotations omitted).

[64] *See Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015) ("In other words, it is not enough that a particular plaintiff deems the work environment hostile; it must also be of the character that it would be deemed hostile by a reasonable employee under the same or similar circumstances.").

[65] *See Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005).

The parties agree that the sole issue for the Court to determine is whether there was severe or pervasive discrimination against Plaintiff. The Tenth Circuit, however, has made clear that " 'the severity and pervasiveness evaluation is particularly unsuited for summary judgment' because it is inherently fact-found by nature."[66]   Furthermore, this determination must be made with an eye toward the totality of the circumstances, as even facially neutral conduct can support a finding of discriminatory animus.[67]

Here, there is a genuine issue of material fact as to whether Plaintiff can show a severe or pervasive hostile work environment sufficient to alter the conditions of his employment. In resisting Defendant's Motion, Plaintiff relies primarily on Buckner's ageist comments. As to frequency, Plaintiff presents uncontroverted evidence that Buckner would "constantly" pressure him to retire. Buckner's other statements were numerous, persistent, and—drawing all reasonable inferences in Plaintiff's favor—derogatory. For example, Buckner told Plaintiff to "take your old ass home" and said, "You're one of the old dinosaurs, you need to leave here." While Defendant argues that MCAAP's commanding officer was called "the Old Man," this potentially affectionate term does not negate other multiple negative uses of ageist language against Plaintiff over the four years in question.

Severity, the second factor, is less easily met. Still, whether "you're a dinosaur," "take your old ass home," and like comments constitute *severe* discriminatory statements is a fact issue best left to a jury. The same goes for Buckner's "smirking." Taking away Plaintiff's responsibilities and supervisory duties by moving him to Medium Caliber, however, seems like a

---

[66] *Lounds*, 812 F.3d at 1222 (quoting *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999)).

[67] *See id.* at 1224, 1226.

more severe form of discriminatory conduct. Of course, that reassignment is facially neutral. Nevertheless, the Court must consider it in ruling on the present motion. In context—and drawing all reasonable inferences in Plaintiff's favor—this reassignment and stripping of duties is probative of a hostile work environment based on age discrimination.

The third factor here also favors finding a hostile work environment in that Buckner's comments were humiliating, not merely offensive.[68] Plaintiff avers that he became frustrated, angry, embarrassed, and had insomnia due to Buckner's comments and the humiliation of being relegated to nonsupervisory duties. It also seems likely that a reasonable person in Plaintiff's place would experience likewise consider Buckner's regular and repeated statements, along with the removal of authority, to be humiliating.

Regarding the last factor, Plaintiff fails to present evidence that the allegedly hostile environment interfered with Plaintiff's work performance. Thus, this factor weighs against finding that Plaintiff suffered from a hostile work environment. Nevertheless, fact issues remain as to two factors, and the third favors finding a hostile work environment. Therefore, it is clear that summary judgment on this claim is inappropriate. Thus, the Court denies Defendant's Motion as to Plaintiff's ADEA hostile work environment claim.

## C.   ADEA retaliation claim

Defendant also moves for summary judgment on Plaintiff's ADEA retaliation claim. Plaintiff, however, makes no response to Defendant's substantive arguments regarding this claim. In fact, he only mentions retaliation once when listing his own claims. Courts may presume that a party abandons its claims by failing to substantively address it when opposing summary

---

[68] Plaintiff does not argue that he ever felt physically threatened by Buckner or Ross.

judgment.[69]   Accordingly, the Court concludes that Plaintiff has abandoned his retaliation claim entirely, and grants Defendant summary judgment as to this claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 77) is **GRANTED in part** and **DENIED in part.**

**IT IS SO ORDERED.**

Dated this 24th day of July, 2023.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[69] *See Tronsgard v. FBL Fin. Grp., Inc.*, 312 F. Supp. 3d 982, 1009 (D. Kan. 2018) ("And, more importantly, plaintiffs don't respond substantively to defendants' argument that Kansas law bars plaintiffs' rescission claim.  The court thus assumes that plaintiffs have abandoned their request for rescission."); *see also Hinsdale v. City of Liberal*, 19 F. App'x 749, 768–69 (10th Cir. 2001) (affirming district court's determination that plaintiff abandoned his equal protection claim by failing to address it in his response to defendant's motion for summary judgment); *see also Benge v. United Parcel Serv., Inc.*, 2022 WL 7484632, at *4–5 (D. Kan. 2022) (acknowledging *Tronsgard* and *Hinsdale* as supporting assumption of abandonment when plaintiff completely fails to defend a claim).